UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:21-CR-00019-JHM

UNITED STATES OF AMERICA                                               PLAINTIFF

v.

COREY STEPHENS                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Suppress Evidence [DN 26]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Suppress Evidence is **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND**

On March 19, 2021, law enforcement officers applied for a search and seizure warrant on the knowledge and belief that Corey Stephens ("Stephens") had engaged in the distribution of child pornography. *See* [DN 26-1]. The warrant application requested permission to search the premises described in "Attachment A." [DN 26-3 at 1]. Attachment A described "3530 State Route 181, Greenville, Kentucky 42345" as a "single-story grey/blue brick residence with two white iron rod decorative columns on the front porch, with dark blue/black shutters and a light grey metal roof." [DN 26-1 at 30]. The warrant application also sought to seize various electronic devices and files involved in the distribution of child pornography, including "cellular phones capable of storage . . . ." [*Id.* at 36]. This Court authorized the warrant. *See* [DN 26-3]. Neither the warrant or its application mentioned vehicles. *See generally* [DN 26-1]; [DN 26-3].

On the morning of May 20, 2021, officers executed that warrant. [DN 35-3 at 5]. Waiting until Stephens left work that morning, the officers followed him home. [DN 45 at 6:20–

21]. There, Stephens parked his vehicle in the driveway adjacent to the residence. [*Id.* at 7:10–15]. Officers immediately approached the car and served the warrant. [*Id.* at 6:22–25]. While Stephens remained in the vehicle, Officer Brad Harper ("Officer Harper") and Special Agent Derek Curtis ("Agent Curtis") observed him making "furtive movements"—specifically, "fiddling down in the console area" as if he was "hiding something." [*Id.* at 27:13–25, 28:1–4]. The officers do not recall him reaching for anything. [*Id.* at 27:13–17]. After Stephens exited the vehicle, officers briefly questioned him outside the vehicle—"where the cab and the bed meet"—and then escorted him to a police cruiser. [*Id.* at 17:18]. Stephens never sought to re-enter the vehicle, but, according to Agent Curtis, the officers would have limited his access upon request. [*Id.* at 34:1–13].

Once Agent Curtis escorted Stephens to his police cruiser, Officer Harper climbed into Stephens's automobile to search for weapons, premising this search on Stephens's previous movements inside the truck. [*Id.* at 45:2–8]. Within the automobile, he discovered a firearm and a cellular phone lodged between the passenger seat and the center console. [*Id.*]. At the evidentiary hearing, Agent Curtis claimed officers could see the phone through the windows, but he admitted he did not see it from the driver-side window. [*Id.* at 20:10–12]. Officer Harper added that he did not immediately see the phone from the passenger-side window. [*Id.* at 44:2–10]. It was not until Officer Harper climbed into Stephens's automobile that the officers viewed Stephens's cellular phone. [*Id.*]. During the investigation, the officers noticed a charging cable connected to the car's dashboard, but they acknowledge it did not connect to the phone. [*Id.*]. Before seizing the phone, the officers photographed the passenger compartment and the device's placement, [*Id.* at 9:15–22]; they also seized a "smart" watch from within the car—though neither Officer Harper or Agent Curtis recall this device. [*Id.* at 23:15–22, 42:11–17].

Meanwhile, Agent Curtis interviewed Stephens in the police vehicle. [*Id.* at 30:13–15]; *see also* [DN 35-2]. In this interaction, Stephens openly discussed his alleged crime. *See generally* [DN 35-2]. Stephens told Agent Curtis his phone's password and revealed an encrypted folder on his device—information which the officers did not previously possess. [DN 45 at 31: 6–17]. Towards the end of their conversation, Stephens signed a property abandonment form for his phone. *See* [DN 35-4]. By the time Stephens had signed this document, the officers outside had seized the device. [DN 45 at 33:19–22]. Afterwards, the officers obtained and executed an arrest warrant for Stephens. [*Id.* at 27:6–12]; *see also* [DN 23].

Stephens moves to suppress all physical evidence obtained from his vehicle—including his cell phone and "smart" watch, contending the officers conducted an unreasonable, warrantless search. *See generally* [DN 26]. Additionally, he seeks to suppress the statement he gave Agent Curtis under the fruit of the poisonous tree doctrine. [*Id.* at 8–9].

## II. DISCUSSION

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and, no Warrant shall issue, but upon . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under this amendment, the Court must first determine whether the warrant authorized a search of Stephens's automobile. If not, the Court then analyzes whether an exception to the Fourth Amendment's warrant requirement covers this search. The Court addresses these issues in turn.

### A. The Warrant Requirement

Generally, to conduct a search, the government must obtain "a warrant . . . particularly describing the place to be searched[.]" *Id.* "The test for determining whether the description in

the warrant is sufficient to satisfy the particularity requirement is whether 'the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended.'" *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). "[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984).

The Court's analysis begins with the search warrant's text. For the location of the property to be searched, the warrant states only: "See Attachment A." [DN 26-3 at 1]. Attachment A lists the location to be searched as "3530 State Route 181, Greenville, Kentucky 42345," describing it as "single-story grey/blue brick residence with two white iron rod decorative columns on the front porch, with dark blue/black shutters and a light grey metal roof." [DN 26-1 at 30]. It does not mention any automobiles. *See* [DN 26 at 4]; [DN 30 at 3]. With this language, the United States argues "a reasonable officer would identify the place to be searched as the premises," including the automobile, "not simply the residence and mailbox." [DN 30 at 3]. Thus, the issue is whether a search warrant listing an address and describing that residence authorizes law enforcement officers to search a vehicle at that location.

The United States contends words in the warrant's attachments encompass Stephens's automobile. [*Id.*]. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). "A search warrant may be construed with reference to a supporting affidavit if the affidavit accompanies the warrant and the warrant incorporates the affidavit by reference." *United States v. Blakeney*, 942 F.2d 1001, 1024 (6th Cir. 1991). The search warrant references "Attachment A"—not Officer Harper's entire affidavit. [DN 26-3]. Therefore, while Officer Harper's affidavit uses broad

4

language like "entire property" and "premises," the search warrant does not incorporate that document. The Court confines its analysis to Attachment A.

Since Attachment A includes only Stephens's residential address and a description of his home, for the search of Stephens's automobile to be valid, that information alone must satisfy the Fourth Amendment's particularity requirement. As the United States notes, courts outside the Sixth Circuit have held that warrants listing residential addresses authorized automobile searches at those locations. *See, e.g., United States v. Napoli*, 530 F.2d 1198, 1200–01 (5th Cir. 1976) (finding a warrant for the "premises known as 3027 Napoleon Avenue" was "sufficient to embrace the vehicle parked in the driveway on those premises"); *see also United States v. Hibbs*, 905 F. Supp. 2d 862, 875 (C.D. Ill. 2012) ("A warrant that identifies a premises with a particular street address also authorizes . . . the search of a vehicle owned by the owner of the premises that is parked at the premises.").

The United States supplies no Sixth Circuit cases supporting this position. In *Fine v. United States*, the Sixth Circuit affirmed a search of a suspect's shed when the warrant used the word "premises," finding that word—among others—to be "broader than a mere description of the house and certainly include[d] the curtilage." 207 F.2d 324, 325 (6th Cir. 1953); *see also United States v. Bennett*, 170 F.3d 632, 637–639 (6th Cir. 1999) (upholding a search of the suspect's "premises"). A few unpublished cases have held "that a warrant authorizing the search of a certain premises usually includes any vehicles within its curtilage if the particular objects of the search might be located in the vehicles." *United States v. Brown*, No. 96-5414, 1998 WL 68931, at *4 (6th Cir. Feb. 11, 1998) (unpublished); *see also United States v. Thompson*, No. 95-5881, 1996 WL 428418, at *2–3 (6th Cir. 1996) (unpublished). But this search warrant—

through Attachment A—does not use the word "premises," specifying only Stephens's "residence." [DN 26-3 at 1].

Upon considering the search warrant's text and pertinent caselaw, the Court concludes the search warrant did not cover Stephens's vehicle. While Sixth Circuit precedent authorizes the government to broadly search a suspect's residence and the respective grounds when the warrant uses the word "premises," as the United States concedes, the warrant here does not include the word "premises." [DN 26-1 at 30]; *see also* [DN 30 at 3]. And although the search warrant's supporting affidavit uses the words "entire property" and "premises," [DN 26-1 at 2–29], the actual search warrant does not explicitly incorporate that document in its description of the place to be search. *See* [*Id.* at 30]. The only document the warrant does incorporate, Attachment A, focuses on Stephens's "residence" and does not use the words "premises," "vehicle," or "automobile." [*Id.*]. Law enforcement officers learned of Stephens's truck on May 18—the day before they applied for the warrant. [DN 45 at 26:20–24]; *see also* [DN 26-2 at 2]. Despite having ample opportunity to specifically include the words "automobile," "vehicle," or "premises" in the warrant, they did not. As such, the Court finds the search warrant's language too narrow to cover Stephens's automobile. Since the warrant did not "particularly describ[e]" Stephens's automobile, the officers conducted a warrantless search of the vehicle under the Fourth Amendment.

### B. Exceptions to the Warrant Requirement

Failing on its initial argument, the United States argues this search falls under "several exceptions to the warrant requirement[.]" *United States v. McLevain*, 310 F.3d 434, 438 (6th Cir. 2002). "The government bears the burden of demonstrating an exception to the warrant requirement." *Taylor v. City of Saginaw*, 922 F.3d 328, 334 (6th Cir. 2019) (citing *United States*

*v. Jeffers*, 342 U.S. 48, 51 (1951)).  Here, the United States invokes four exceptions: plain view; search incident to lawful arrest; automobile exception; and abandonment.  *See* [DN 30 at 4–6]. Of these, the Court's analysis begins and ends with the plain view exception.

The plain view exception reasons "that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment . . . ." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).  The exception has four elements: (1) "the object must be in plain view"; (2) "the officer must be legally present in the place from which the object can be plainly seen"; (3) "the object's incriminating nature must be immediately apparent"; and (4) "the officer must have right of access to the object." *United States v. Rosario*, 558 F. Supp. 2d 723, 727 (E.D. Ky. 2008) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)).  Stephens contests the second and fourth.  [DN 47 at 5].

Starting with the second element, the Court looks to whether the officers "violate[d] the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton*, 496 U.S. at 136.  The United States purports Officer Harper "followed Stephens up the driveway, looked into the vehicle, and plainly saw Stephen's Samsung Galaxy phone . . . ." [DN 30 at 4–5].  Officer Harper's testimony directly contradicts this account; during the evidentiary hearing, he admitted he first viewed the phone while inside Stephens's automobile.  [DN 45 at 43:2–8].  Thus, Officer Harper had to be "legally present" within the car.

Officer Harper entered Stephens's automobile for one reason: to check for weapons.  [DN 45 at 43:2–6].  In *Michigan v. Long*, the Supreme Court held an officer may search an automobile's passenger compartment for weapons if he "possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts,

7

reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." 463 U.S. 1032, 1036 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)); *see also United States v. Graham*, 483 F.3d 431, 439–440 (6th Cir. 2007). Officer Harper's based his belief exclusively on Stephens's "furtive movements." [DN 45 at 43:3–5]. When Agent Curtis and Officer Harper approached the vehicle, they both observed Stephens "fiddling down in the console area" as if he was "hiding something." [*Id.* at 27–28, 43].[1] According to the officers, this movement was a "tucking" motion and Stephens never "reached" for anything. [DN 45 at 27:13–17, 43:3–6].

Precedent explains "[f]urtive movements made in response to a police presence may . . . properly contribute to an officer's suspicions." *United States v. Caruthers,* 458 F.3d 459, 466 (6th Cir. 2006). Many Sixth Circuit cases upholding weapons searches in the automobile context cite additional factors beyond furtive movements. *See, e.g., Graham*, 483 F.3d at 440 (furtive movement and tip); *United States v. Ware*, 465 F. App'x 487, 493–94 (6th Cir. 2012) (same). None of these cases hold that an officer's suspicion *must* be based on more than "furtive movements." And, in *United States v. Bost*, the Sixth Circuit found a defendant "reach[ing] his hand between the center console and a child's seat in the front passenger seat of the car" could reasonably "constitute an attempt to . . . reach for a weapon." 606 F. App'x 821, 825 (6th Cir. 2015) (upholding a pat-down search). Similarly, this issue divides other district courts. *Compare United States v. Sawyers*, 74 F. Supp. 2d 784, 789 (M.D. Tenn. 1999) ("furtive movements of the hands *alone* fail to justify a warrantless seizure and search") *with United States v. Goins*, 157 F. Supp. 3d 148, 159 (D. Conn. 2016) ("Such movements alone have been

---

[1] Officer Harper's testimony suggest he saw Stephens's firearm "when [he] looked through the passenger side window . . . ." [DN 45 at 44:8–12]. Elsewhere, he explicitly states he "didn't know it was a firearm at the time, but the furtive movement, that's what I assumed it could be." [*Id.* at 43:14–16].

8

found to justify a protective search in the absence of any other information, so long as the search occurs near where the furtive movements were directed."). In sum, courts agree that furtive movements may contribute to an officer's suspicion, but they disagree on how much weight to assign that factor.

Applying this law to the present case, the Court finds Stephens's "furtive movements" provided sufficient reasonable suspicion for Officer Harper to search the automobile for weapons. As the officers approached the vehicle, they had no way of knowing if his actions constituted a potential threat. Furthermore, the fact that Officer Harper searched Stephens's automobile for weapons while he was being questioned in the police cruiser does not affect this analysis. In *Long*, the Supreme Court remarked that a suspect might "break away from police control and retrieve a weapon from his automobile . . . . In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." 463 U.S. at 1051–52. Much like the facts here, the Sixth Circuit in *United States v. Terrell* upheld a weapons search when the suspect "sat in the back seat of the police car when [the officer] removed the gun from his car." 95 F. App'x 746, 748 (6th Cir. 2004). In sum, Officer Harper was "legally present" in the automobile when he viewed the phone.

Returning to the plain view exception, Officer Harper's actions satisfy the remaining elements. For the first element, once Officer Harper climbed into the automobile, the phone was in "plain view." As he stated, he viewed the phone "in the crack area" between the seat and the center console. [DN 45 at 39:1–4]. The officers' photographs of the automobile interior confirm the phone was viewable from this position. *See* [DN 47 at 3].

For the third element, "the intrinsic nature of a cell phone does not immediately give suspicion that it is associated with criminal behavior." *United States v. Lewis*, No. 5:14-CR-6,

9

2015 WL 1884375, at *4 (W.D. Ky. Apr. 24, 2015). Here, however, the officers had knowledge that Stephens's cell phone could be connected to the production and distribution of child pornography. [DN 45 at 39:18–20]. In fact, the warrant listed Stephens's cell phone as potential evidence of those alleged crimes and authorized its seizure. [DN 26-1 at 36]. "The seizure of an apparently innocuous item may be proper when law enforcement have probable cause to believe it is connected to illegal activity." *Lewis*, 2015 WL 1884375, at *4 (citing *United States v. Mathis*, 738 F.3d 719, 733 (6th Cir. 2013)). Within this context, the incriminating nature of the phone was immediately apparent to Officer Harper.

For the last element, Officer Harper had "lawful access" to the phone. "The difference between the 'lawfully positioned' and 'lawful right of access' is thus that the former refers to where the officer stands when she sees the item, and the latter to where she must be to retrieve the item." *United States v. Dixon*, 405 F. App'x 19, 22 (6th Cir. 2010) (quoting *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004)). Once Officer Harper climbed into Stephens's car, he could see and access the cell phone lodged between the passenger seat and the center console. [DN 45 at 43:2–6]. The photographs from within the cabin again confirm that the officers could have accessed this device without moving Stephens's property. *See* [DN 47 at 4]. Moreover, for this element, the Sixth Circuit has said "this requirement of a lawful right of access means that generally an officer should get a warrant if possible before he seizes an item in plain view." *McLevain*, 310 F.3d at 443. One district court in Kentucky found this requirement fulfilled when the "images or data stored" was "suspected to contain child pornography [and] may have easily been deleted, damaged, or overwritten to the point that they were unrecoverable." *Rosario*, 558 F. Supp. 2d at 728. Identical reasoning applies here.

To summarize, the government's seizure of the phone falls within the plain view exception to the warrant requirement. Officer Harper lawfully entered Stephens's automobile to search for weapons; once there, he could plainly see and access Stephens's phone—a device he knew to be associated with the alleged crime. As such, the officers' seizure of the phone comported with the Fourth Amendment.

However, Stephens also seeks to suppress the "smart" watch seized from within the car. *See* [DN 26 at 2]. Curiously, neither Officer Harper or Agent Curtis recall observing or seizing this device. [DN 45 at 23:15–22, 42:11–17]. As explained above, the warrant did not cover the vehicle; therefore, like the phone, the government must justify the seizure of the "smart" watch under an exception to the warrant requirement. But the United States poses no such argument. *See generally* [DN 30]. Again, "[t]he government bears the burden of demonstrating an exception to the warrant requirement." *Taylor*, 922 F.3d at 334. "Similarly, the government also bears the burden of showing that the good faith exception applies." *United States v. Anderson*, No. 4:07-CR-0023, 2007 WL 4732033, at *14 (N.D. Ohio June 21, 2007). Considering the United States never once mentions the watch in its response, the government has not carried its burden on these exceptions. The Court must suppress this physical evidence.

Nevertheless, the Court will not suppress Stephens's statement under the fruit of the poisonous tree doctrine. *See Wong Sun v. United States*, 371 U.S. 471 (1963). During the interview, Agent Curtis never questioned Stephens about the watch. *See* [DN 35-2]. In short, even though the officers acquired the watch through an unconstitutional search, that search in no way "tainted" Stephens's statement.

### III. CONCLUSION

In conclusion, the search warrant did not authorize law enforcement officers to search

Stephens's automobile. Still, Stephens's cellphone comes within the plain view exception to the warrant requirement. Because the United States did not provide any arguments supporting the government's seizure of Stephens's "smart" watch, however, the Court must suppress that device. The Court does not address any other exceptions to the warrant requirement or the good-faith exception to the exclusionary rule. *See* [DN 30 at 4–7]. Furthermore, for the reasons stated above, the Court will not suppress Stephens's statement under the fruit of the poisonous tree doctrine. *See* [DN 26 at 8].

For the reasons set forth above, **IT IS HEREBY ORDERED** that Stephens's Motion to Suppress Evidence [DN 26] is **GRANTED IN PART AND DENIED IN PART**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Counsel of Record

May 11, 2022